# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| **ROBERT TURNER,** | |
| Plaintiff, | No. **13-CV-3008-DEO** |
| v. | |
| **CAROLYN W. COLVIN,** Commissioner of Social Security,[1] | **ORDER** |
| Defendant. | |

This matter is before the Court pursuant to Ismael Soria's [hereinafter Mr. Soria] application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. The parties appeared for a hearing on August 29, 2013. This is an unusual case in that the Plaintiff has not asked for an award of benefits, but has only asked his case be remanded so the record can be further developed. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

---

[1] Mr. Turner originally filed this case against Michael J. Astrue, Comm. of Social Security. On February 14, 2013, Carolyn W. Colvin became the Commissioner of SSA. The Court, therefore, substitutes Commissioner Colvin as the defendant in this action. Fed. R. Civ. P. 25(d)(1).

**I.  FACTUAL BACKGROUND**

Mr. Turner was born May 22, 1969, and was 43 at the time of the hearing.  He has a high school education.  He took some college courses immediately proceeding the alleged onset date, but has no degree.  He lives with his girlfriend in Rockwell City, Iowa.  He alleges disability based primarily on the loss of his sight.  Mr. Turner lost most of his vision on July 15, 2010, due to a retinal hemorrhage which left him blind in his right eye and with very poor vision in his left eye due to branch retinal vein occlusion and multiple hemorrhages.  Mr. Turner also recently suffered from a severe gastrointestinal bleeding issue which developed in 2012.  Finally, in September 2008, Mr. Turner was injured in a motorcycle accident wherein he was traveling approximately sixty-five miles per hour and struck another vehicle.  He suffered torn right posterior ligament of his right knee, multiple soft tissue injuries, and compression syndrome of his right lower extremity which required fasciotomy.[2]  As a result of this injury, Mr. Turner

---

[2]  Fasciotomy is a type of surgery done to relieve pressure to allow better circulation.

was prescribed a leg brace and advised to use an ambulatory device when needed.

## II. PROCEDURAL HISTORY

This is a proceeding under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. Section 405(g) of the Act provides for judicial review of a "final decision of the Commissioner of the Social Security Administration [("SSA")]." Mr. Turner filed for disability benefits under Title II on August 3, 2010, with an alleged onset date of July 15, 2010. Mr. Turner's claim was denied initially March 28, 2011, and on reconsideration on July 6, 2011. A hearing was held before an administrative law judge on July 6, 2012. Mr. Turner appeared at the hearing pro se. On July 27, 2012, following the hearing, the administrative law judge ("ALJ") found Mr. Turner was not under a "disability" as defined in the Act. Following denial by the ALJ, Mr. Turner retained counsel, appealed his case to the Appeals Council, who denied it on December 18, 2012. Mr. Turner filed the present Complaint on February 8, 2013.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2013. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

Docket No. 10, Tr. 22.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment"

4

that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and lasts at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual

5

Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide

"evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Mr. Turner has not engaged in substantial gainful employment since July 15, 2010. The ALJ found two severe impairments, hypertensive retinopathy and a history of posterior ligament tear in his right knee. The ALJ noted other, non-severe impairments of diabetes, high blood pressure, and rectal bleeding. However, the ALJ found that Mr. Turner did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Although the claimant has sustained substantial visual loss in his right eye due to retinal hemorrhage, the damage in his left eye would be mainly from hypertensive

7

> retinopathy. In that eye, he may have some difficulty with depth perception and especially with trying to do fine, detailed work but his visual acuity measurements do not approach listing level severity. His elevated blood pressure readings have indicated adequate control with anti-hypertensive medications. The undersigned believes that his vision on the left is appropriate for doing some significant work tasks, including those cited by the vocational expert at the hearing.
>
> As to his right knee problem, the claimant does not necessarily have major destruction of the knee joint. However, he does seem to have some instability in the knee from ligament damage that could require a knee brace. In any event, the objective evidence as will be discussed below shows that he continues to have adequate ambulation without actual inability to bear weight, and that his ability to stand and walk is not compromised to the point that he could not be on his feet for less than 6 hours of the regular 8-hour workday.

Docket No. 10, Tr. 25.

The ALJ went on to consider residual functional capacity and concluded:

> [a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: he should avoid concentrated exposure to hazards, should never climb ropes, ladders or scaffolds, and should have no jobs

8

>       requiring fine visual acuity, fine depth
>       perception, fine far acuity as well as fine
>       near  acuity.

Docket No. 10, Tr. 25. In making that determination, the ALJ relied on the state agency medical consultant. <u>Id.</u> The ALJ went on to find that Mr. Turner could not return to past relevant work. However, the ALJ determined that there are jobs that exist in significant number in the national economy that Mr. Turner can perform.

**III. STANDARD OF REVIEW**

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th

Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**IV. ISSUES**

In his brief, Mr. Turner raises two related issues: the ALJ failed to develop the record by not ordering a

consultative examination, and the ALJ failed develop the record regarding a listing 2.03 visual limitation.

**V. ANALYSIS**

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A).

**A. Consultative Examination**

The basic issue in this case is that Mr. Turner was not represented by counsel until after the ALJ hearing. The Plaintiff argues that the ALJ failed to develop the record and, essentially, made a determination without having all the facts. This Court agrees.

The Plaintiff argues:

> [t]he ALJ failed to develop the record in this case, no consultative examination had

>   been ordered by DDS prior to hearing, and
>   the ALJ did not order a post-hearing
>   consultative examination.

Docket No. 12, p. 16.

The 8th Circuit Court of Appeals has previously criticized ALJ proceedings where the record is not adequately developed.

>   Many of the inadequacies of the ALJ's
>   decision flow from his failure to develop
>   the record. The administrative hearing is
>   not an adversarial proceeding. See <u>Battles
>   v. Shalala</u>, 36 F.3d 43, 44 (8th Cir. 1994).
>   The ALJ has a duty to develop facts fully
>   and fairly, and this duty is enhanced when
>   the claimant is not represented by counsel.
>   See <u>Mitchell v. Shalala</u>, 25 F.3d 712, 714
>   (8th Cir.1994).

<u>Cox v. Apfel</u>, 160 F.3d 1203, 1209 (8th Cir. 1998). "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." <u>Freeman v. Apfel</u>, 208 F.3d 687, 692 (8th Cir. 2000)(internal citations omitted).

Based on that law, the Plaintiff argues:

>   [o]ften DDS orders a consultative
>   examination during the reconsideration
>   phase of review, however that was not done
>   in this case despite Mr. Turner's assertion
>   that he has trouble walking and standing.
>   In his function forms Mr. Turner reported
>   that he is only able to stand or walk for

> 30 minutes and can walk two blocks before he needs to stop and rest. (A.R. 220, 223) In his request for reconsideration, Mr. Turner disagreed with the denial of benefits and stated that his "right leg has gotten worse to stand on." (A.R. 99) In addition to DDS, an ALJ is also granted the authority under the regulations to order a consultative examination when warranted... [citing] 20 C.F.R. § 404.1517.

Docket No. 12, p. 17-18. Moreover,

> [i]n this case, there were no assessments or treatment records for the preceding four years regarding Mr. Turner's right leg and knee condition and his resulting impairments. The only treatment records in the record relate to the time during which he was hospitalized from the motorcycle injury in 2008. The ALJ lacked any thorough evaluation of Mr. Turner's current leg and knee condition. Mr. Turner had no insurance after 2008, and his only medical care thereafter was for his eye condition in 2010-2011, and his emergency gastrointestinal bleed in 2012. The ALJ clearly lacked sufficient medical evidence on which to assess Mr. Turner's residual functional capacity to stand, walk and lift.

Docket No. 12, p. 18. The Plaintiff concludes, "[t]he ALJ's assessment of these issues was incomplete and without current medical support for Mr. Turner's present condition and limitations." Docket No. 12, p. 19.

13

As Judge Pratt stated, "[t]he burden of proof, therefore, is on the Commissioner to prove with medical evidence that Plaintiff has a residual functional capacity to engage in work activity, and that other jobs exist in significant numbers that Plaintiff is able to do in his impaired condition." Clester v. Apfel, 70 F. Supp. 2d 985, 992 (S.D. Iowa 1999). In this case, the ALJ improperly reached his own medical conclusion without reference to sufficient medical evidence. The ALJ had a duty to develop the record. Instead, because Mr. Turner was not represented by counsel, the ALJ chose to rely on absolutely perplexing medical evidence, such an ophthalmologist's opinion about Mr. Turner's knee, to determine that Mr. Turner had the residual functional capacity to obtain substantial gainful employment. Accordingly, the ALJ's RFC is not supported by substantial evidence. The Plaintiff asks this issue be remanded for a consultative examination. That request is granted.

**B. 2.03 Listing**

Next, the Plaintiff argues that the ALJ failed to consider 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.00(A)(6), 2.03, which considers contraction of the visual field. In

this case, the ALJ only considered 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 2.00(A)(6), 2.02, which deals with visual acuity. The Defendant argues that the ALJ was correct in determining that Mr. Turner had no vision field limitation. Docket No. 13, p. 10. However, that response misses the substance of the Plaintiff's argument. The Plaintiff does not argue that the ALJ's Listing 2.03 analysis was wrong. The Plaintiff argues that the ALJ's Listing 2.03 analysis never occurred. Specifically:

> [t]he ALJ's RFC provided in pertinent part the following restriction regarding visual impairments: "should have no jobs requiring fine visual acuity, fine depth perception, fine far acuity as well as fine near acuity." (A.R. 25) The ALJ's decision provides, "[t]he undersigned believes that his vision on the left is appropriate for doing some significant work tasks, including those cited by the vocational expert at the hearing." (A.R. 25) However, the only analysis performed by the ALJ was in relation to visual acuity. There is no mention of consideration of Listing 2.03, or any analysis of the contraction of Mr. [Turner's] visual field.

Docket No. 12, p. 21.

As the Plaintiff points out, the ALJ must apply the five-step sequential analysis to determine a claimant's

disability status. 20 C.F.R. §§ 416.920(a)-(f) (1999); see also, Cruze v. Chater, 85 F.3d 1320 (8th Cir. 1996). At step three of the required analysis, the ALJ must determine whether a claimant has a physical or mental "impairment that meets or equals a presumptively disabling impairment listed in the regulation." Baker v. Apfel, 159 F.3d 1140, 1143 (8th Cir. 1998); Barry v. Shalala, 885 F. Supp. 1224, 1243 (N.D. Iowa 1995). The ALJ in this case failed to fully comply with step three due to the lack of analysis of Listing 2.03. Accordingly, this issue must be remanded. See Rice v. Astrue, CIV. 11-2208, 2012 WL 5383112 (W.D. Ark. 2012) report and recommendation adopted, 2:11-CV-02208, 2012 WL 5383108 (W.D. Ark. 2012), stating: "[t]he ALJ states that he considered Plaintiff's retinopathy under listing 2.02, which requires a loss of visual acuity with remaining vision in the better eye of 20/200 or less after best correction, however, there is no indication that he also considered listings 2.03 (contraction of the visual field in the better eye) and 2.04 (loss of visual efficiency). The statute clearly states that if Plaintiff met listing 2.02, 2.03, or 2.04, then he would also meet the listing for diabetes. Because the ALJ failed to

consider these other two listings, we believe remand is necessary to allow the ALJ to reevaluate the evidence and determine whether Plaintiff's impairment met or equaled one of these listings."

## VI. CONCLUSION

It is clear the ALJ erred in the two areas set out above. Accordingly, this case is reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to have completed a consultative examination on Mr. Turner's knee. Additionally, the ALJ must consider Mr. Turner's eyesight under Listing 2.03. To help that evaluation, the ALJ shall order a consultative evaluation on Mr. Turner's field of vision. Additionally, the ALJ shall further develop the record as necessary to cover any medical developments since the last hearing. After those evaluations, the ALJ must reconsider Mr. Turner's claim.

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if

plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 25th day of March, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa